## UNITED STATES WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Jeremy and Britany Simmons | ) | |
| Individually and on behalf of a class | ) | Complaint for a Civil Case |
| Of similarly situated individuals | ) | Case No. |
| | ) | |
| Plaintiffs | ) | Jury Trial Demand |
| | ) | |
| v. | ) | |
| | ) | |
| Midwestern Pet Foods, Inc. | ) | |
| | ) | |
| Defendant | | |

## CLASS ACTION COMPLAINT

Plaintiff Jeremy and Britany Simmons ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned attorneys, bring this Class Action Complaint against Defendants Midwestern Pet Foods, Inc, ("Midwestern" or "Defendant").

### Introduction

1.    Plaintiffs allege Defendant Midwestern inappropriately manufactured, sold, and distributed pet food with mold, toxins, and/or aflatoxins that caused injury and harm to their animals and pets.

2.    Defendant Midwestern manufactures, markets, advertises, labels, distributes, and sells Pet and Dog Food under the brand names Sportmix (Sportmix Energy Plus, Sportmix Premium High Energy, Sportmix Original Cat, Sportmix Maintenance, Sportmix High Protein, Sportmix Stamina, Sportmix Bite Size, Sportmix High Energy, Sportmix Premium Puppy), Pro Pac Adult Mini Chunk, Pro Pac Performance Puppy, Splash Fat Cat, and Nunn Better Maintenance (collectively " Dog Foods"). Defendant sells these products throughout the United States (Missouri, Oklahoma, Arkansas, Kansas, Kentucky, Louisiana, New Mexico, Oregon, Texas, Washington), including in this District.

1

3.     Plaintiffs seek both injunctive and monetary relief individually and on behalf of the proposed Class including: (i) requiring full disclosure of all such substances and ingredients in Defendant's pet foods, including marketing, advertising, and labeling; (ii) requiring testing of all ingredients and pet foods for such substances; (iii) prohibiting the sale of any adulterated pet food in the future and (iv) compensating all damages experienced by the members of the proposed Class.

## Jurisdiction and Venue

4.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs reside and suffered harm as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this District, Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to personal jurisdiction in this District.

## Parties

6.     Plaintiffs Jeremy and Britany Simmons reside in Falcon, Missouri.  Plaintiffs are pet owners and licensed dog breeders.  Plaintiffs own and operate Gladerock Farms.

7.     Plaintiffs relied upon the representations, advertising, marketing material, and recommendations related to Midwestern's Pet Foods and purchased such Pet Foods, including Pet Foods with toxins, mold, and/or aflatoxins.

2

8.      Plaintiffs fed Defendant's Pet Food to their dogs and animals.

9.      Many of Plaintiffs' dogs were sickened and/or died, as a result of ingesting Defendant's Pet Food.  Likewise, many other pets and dogs were sickened or died as a result of ingesting Defendant's Pet Food.

10.     Based on the false and misleading claims, representations, advertisements, and other marketing by Defendant, Plaintiffs were unaware that the Pet/Dog Foods contained and/or had a risk of containing elevated levels of mold/toxins/aflatoxins that did not conform to the labels, packaging, advertising, and statements and would not have purchased the pet food if that was fully disclosed.

11.     Plaintiffs paid for Defendant's Pet Foods on the assumption that the labeling of the Pet Foods was accurate and that it was suitable for consumption by dogs, was healthy, nutritious, premium, and clinically approved, and was subject to strict quality control measures, and/or unadulterated.

12.     Plaintiffs would not have relied upon or paid money had they known Defendant's Pet Foods contained and/or had risk of containing elevated levels of toxins and/or mold and/or aflatoxins or other ingredients that do not conform to the labels, packaging, advertising, and statements.

13.     As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct and representations, Plaintiffs suffered injury, harm, damages, veterinary care/expenses, consequential damages, incidental damages, and loss of business income, among other costs and expenses.

14.     Further, Plaintiffs suffered injury and illness to animals, pets and loss of life to pets (including dogs), and other past and future damages and/or lost revenue.

3

15.     Defendant Midwestern Pet Foods, Inc. is a privately-owned for-profit company headquartered at 9634 Hedden Rd, Evansville, IN 47725.

16.     Midwestern's registered agent is ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP located at 20 NW FIRST STREET, 9TH FLOOR, Evansville, IN, 47708, USA.

17.     Midwestern operates facilities in Monmouth, IL, Chickasha, OK, Evansville, IN, and Waverly, NY.

18.     Midwestern manufactures and sells its pet food across the country, including brands Sportmix, Earthborn Holistic, Pro Pac, Venture, Wholesomes, and Unrefined.

19.     SPORTMIX, and the other brands, are registered trademarks owned and operated by Defendant Midwestern.

## Recall

20.     On December 30, 2020, Midwestern Pet Foods, Inc. announced a recall of certain lots of Sportmix pet food products after the FDA was alerted about reports.

21.     On January 11, 2021, Midwestern Pet Foods, Inc. expanded the recall to include all pet foods containing corn and manufactured in the company's Oklahoma plant.

22.     The recalled products, identified to date, are:

- Sportmix Energy Plus, 50 lb. bag (Exp 03/02/22/05/L2; Exp 03/02/22/05/L3; Exp 03/03/22/05/L2)
- Sportmix Energy Plus, 44 lb. bag (Exp 03/02/22/05/L3)
- Sportmix Premium High Energy, 50 lb. bag (Exp 03/03/22/05/L3)
- Sportmix Premium High Energy, 44 lb. bag (Exp 03/03/22/05/L3)
- Sportmix Original Cat, 31 lb. bag (Exp 03/03/22/05/L3)
- Sportmix Original Cat, 15 lb. bag (Exp 03/03/22/05/L2; Exp 03/03/22/05/L3)

23.     Lots of the following pet food products have been recalled if the date/lot code includes an expiration date on or before "07/09/22" and includes "05" in the date/lot code, which identifies products made in the Oklahoma plant:

4

- Pro Pac Adult Mini Chunk, 40 lb. bag
- Pro Pac Performance Puppy, 40 lb. bag
- Splash Fat Cat 32%, 50 lb. bag
- Nunn Better Maintenance, 50 lb. bag
- Sportmix Original Cat, 15 lb. bag
- Sportmix Original Cat, 31 lb. bag
- Sportmix Maintenance, 44 lb. bag
- Sportmix Maintenance, 50 lb. bag
- Sportmix High Protein, 50 lb. bag
- Sportmix Energy Plus, 44 lb. bag
- Sportmix Energy Plus, 50 lb. bag
- Sportmix Stamina, 44 lb. bag
- Sportmix Stamina, 50 lb. bag
- Sportmix Bite Size, 40 lb. bag
- Sportmix Bite Size, 44 lb. bag
- Sportmix High Energy, 44 lb. bag
- Sportmix High Energy, 50 lb. bag
- Sportmix Premium Puppy, 16.5 lb. bag
- Sportmix Premium Puppy, 33 lb. bag

24.     Multiple product samples of Defendant's Pet Foods were tested by the Missouri Department of Agriculture and the FDA and were found to contain inappropriate and very high levels of aflatoxins, mold, and/or other toxins or poisons in violation of law and industry standards and were found to be unsafe for pet consumption.

25.     Aflatoxin is a toxin produced by the mold Aspergillus flavus, which can grow on corn and other grains used as ingredients in pet food. The toxins can be present even if there is no visible mold.

26.     Aflatoxins, at high levels, can cause illness and death in pets, animals, and dogs.

27.     Pets that eat food containing unsafe levels of aflatoxins can develop aflatoxin poisoning.

28.     Pets are highly susceptible to aflatoxin poisoning.

5

29.     As of January 11, 2021, the FDA has been made aware of more than 70 dogs that have died and more than 80 that are sick after eating Defendant's Pet Foods, including Sportmix and other products subject to recall.

30.     Prior to the recall Defendant Midwestern did not warn Plaintiffs, or any member of the Class, that the Pet Food would cause harm and death to their pets and animals.

<u>**Common Factual Allegations**</u>

31.     Defendant Midwestern formulates, develops, manufactures, labels, packages, markets, advertises, distributes and sells their Pet Foods across the United States, including at retail stores, veterinary clinics, pet retailers, and agriculture retailers, as well as through online retailers.

32.     No matter where consumers purchase the Pet Foods, they are packaged in sealed in bags and containers with the same labeling and packaging that is displayed on the Defendant's website.

33.     Defendant Midwestern marketed the pet/dog foods to consumers, including  pet owners, breeders, and veterinary professionals, with specific promises and representations of being safe and providing medical and/or health solutions to pets, yet failed to disclose the foods contained toxins.

34.     Midwestern represents and advertises its pet foods as safe and healthy. Midwestern advertises a "guaranteed analysis" for its pet foods, among other representations.

35.     Midwestern represents that it creates its own recipes, chooses its own ingredients, and prepares and manufactures its own pet food.

6

36.     Midwestern represents and advertises that all Sportmix foods are designed to provide complete and balanced nutrition and meet Association of American Feed Control Officials (AAFCO) requirements.

37.     Midwestern represents and advertises its pet food products, and Sportmix specifically, are 100% guaranteed.

38.     Based on Defendant's representations, warranties, labels, and various affirmations of fact about the quality of their manufacturing processes, consumers across the country paid a premium for Defendant's Pet Foods.

39.     Defendant's Pet Foods that consumers across the country have fed to their pets and animals have proven to be toxic, containing excessive levels of aflatoxins, causing symptoms of liver or renal failures such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, vomiting, and often death.

40.     The pets experiencing aflatoxin poisoning have symptoms such as sluggishness, loss of appetite, vomiting, jaundice (yellowish tint to the eyes or gums due to liver damage), and/or diarrhea.  In severe cases, this toxicity can be fatal. In some cases, pets may suffer liver damage but not show any symptoms.

41.     Pet food containing excessive levels of toxins or aflatoxins or mold that is injurious (such as here) is adulterated food under various relevant state and federal regulations, including the Federal Food, Drug, Cosmetic Act (FDCA).

42.     Specifically, under the Federal Food, Drug, Cosmetic Act (FDCA), a food is adulterated if it "bears or contains any poisonous or deleterious substance which may render it injurious to health."  21 U.S.C. § 342.

7

43.     Plaintiffs reasonably relied on Defendant's own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Pet Foods.

44.     Plaintiffs also relied upon Defendant's false and/or misleading representations alleged herein, including the websites and/or the Pet Foods' labels and packaging in making their purchasing decisions.

45.     Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase. Here, Plaintiff relied on the veracity of the various specific statements and misrepresentations by Defendant that the Pet Foods were (1) suitable for consumption by dogs, (2) healthy and nutritious, (3) premium, (4) clinically approved, (5) subject to strict quality control measures, and/or (6) unadulterated, with no disclosure of the inclusion of excessive mold, toxins, or aflatoxins or other ingredients that do not conform to the labels, packaging, advertising, and statements.

46.     Defendant has, and had, exclusive knowledge of the physical and chemical makeup of their Pet Foods.  Defendant also had exclusive control and knowledge of the manufacturing process, including the ingredients, manufacturing, storage, testing, and quality control of the final product.

47.     Defendant Midwestern failed to take all reasonable precautions to ensure that production of its Pet Food and procedures did not contribute contamination to the Pet Food.

48.     Defendant Midwestern failed to provide washing and sanitizing practices at each location in their production facilities as needed.

8

49. Defendant Midwestern failed to maintain equipment, containers and utensils used to manufacture, convey, hold, and store pet food in a manner that protects against contamination.

50. Defendant Midwestern failed to maintain equipment so as to facilitate cleaning of the equipment.

51. Defendant Midwestern failed to safely and adequately take necessary action to prevent, kill, and protect its Pet Food so as to prevent and/or eliminate the development of mold, toxins, and/or aflatoxins in its Pet Food.

## Privity

52. Defendant knew or should have known that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Dog Foods and the target of their advertising, representations, and statements.

53. Defendant intended that the advertising, labeling, statements, and representations would be considered by the end purchasers of the Pet Foods, including Plaintiffs and the proposed Class.

54. Defendant directly marketed to Plaintiffs and the proposed Class through statements on their website, representations, labeling, advertising, and packaging.

55. Plaintiffs are the intended third-party beneficiaries of the contracts/agreements between Defendant and retailers, suppliers, distributors and/or other third parties.

## Class Action Allegations

56. Plaintiffs brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

9

**A.**     **National Class.  All persons who purchased and used Defendant's Pet Foods, which contained toxins, mold, and/or aflatoxins, for household or business use, and not for resale (the "Class").**

**B.**     **Missouri Class.  All Missouri residents who purchased and used Defendant's Pet Foods, which contained toxins, mold, and/or aflatoxins, for household or business use, and not for resale (the "Class").**

57.     Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

58.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

59.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

60.     While the exact number and identities of the members of the Class is unknown at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiffs allege the Class is comprised of thousands of geographically disbursed consumers throughout the United States.

**61.     Questions of law and fact common to Plaintiffs and the Class include**, but are not limited to, the following:

(a)     whether Defendant owed a duty of care to Plaintiffs and the Class;

10

(b)     whether the Pet/Dog Foods contained harmful and excessive levels of toxins/mold/aflatoxins;

(c)     whether Defendant knew or should have known that the Pet/Dog Foods contained excessive levels of toxins/mold/aflatoxins or other ingredients that do not conform to the labels, packaging, advertising and statements;

(d)     whether Defendant failed to test for the presence of excessive of toxins/mold/aflatoxins or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(e)     whether Defendant falsely or wrongfully represented and continue to represent that the Pet Foods are suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or safe;

(f)     whether Defendant falsely or wrongfully represented and continues to represent that the manufacturing of the Pet Foods is subjected to rigorous standards and/or safe, including temperature;

(g)     whether Defendant wrongfully failed to state that the Pet Foods contained (or had a risk or probability of containing) excessive levels of toxins/mold/aflatoxins and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements;

(h)     whether Defendant's representations in advertising, statements in packaging, and/or labeling are false, deceptive, and misleading;

(i)     whether those representations are likely to deceive a reasonable consumer;

(j)     whether a reasonable consumer would consider the excessive toxins or other ingredients that do not conform to the labels, packaging, advertising, and statements as a material fact in purchasing pet food;

11

(k)      whether Defendant had knowledge that their representations, packaging, and labeling were false, deceptive, and misleading;

(l)      whether Defendant continues to disseminate representations despite knowledge that the representations are false, deceptive, and misleading;

(m)      whether a representation that a product is suitable for consumption by pets/dogs as healthy, safe, nutritious, premium, clinically approved, and/or subject to strict quality control measures is material to a reasonable consumer;

(n)      whether Defendant's representations and descriptions on the labeling of the Pet Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(p)      whether Defendant engaged in unfair trade practices;

(q)      whether Defendant's conduct was negligent;

(r)      whether Defendant's conduct was fraudulent;

(s)      whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

(t)      whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

(u)      whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

62.      Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

12

63. Plaintiffs' claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

64. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

65. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is similar in that, absent representative litigation, it would be infeasible for individual members of the Class to redress the wrongs done to them.

66. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

### Count I – Breach of Express Warranty

Plaintiffs incorporate by reference all other allegations.

67. Defendant marketed and sold their Pet Foods into the stream of commerce with the intent that the Dog Foods would be purchased by Plaintiffs and the Class.

68. Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that their Pet Foods conform to the labeling and are safe, healthy and nutritional for pets and dogs, including:

(a)    100% guaranteed

(b)    "formulated to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for maintenance"

(c)    100% complete and balanced and scientifically formulated with proper blends of nutrients and essential vitamins and minerals.

13

(d)      100% complete and balanced and will give your pet the essential nutrients, vitamins and minerals he needs along with a great taste he's sure to love.

69.      Defendants made these express warranties regarding the Pet Foods' quality, ingredients, and fitness for consumption in writing through their websites, advertisements, and marketing materials and on the Pet Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Pet Foods.

70.      Defendant's advertisements, warranties, and representations were made in connection with the sale of the Pet Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Pet Foods in deciding whether to purchase Defendant's products.

71.      Defendant's Pet Foods did not conform to Defendant's advertisements, warranties and representations in that they:

(a)      Were adulterated;

(b)      Are neither premium nor suitable for consumption by pets or dogs;

(c)      Do not provide nutrition;

(d)      Were not Manufactured using reasonable or rigorous quality and safety standards

(e)      Were not subjected to adequate quality and safety checks, inspections, and audits throughout the manufacturing process;

(f)      Contained ingredients procured from suppliers known to sell adulterated ingredients;

(g)      Contained unacceptable amounts of mold, toxins, and/or aflatoxins; and

(h)      Harmed, sickened, or killed animals, dogs, and pets; and.

(i)     Harmed the special relationships between people and their pets.

72.     Defendant was on notice of this breach as they were aware or should have been aware of the excessive toxins, mold, and aflatoxins that rendered their Pet Foods unhealthy and unfit for pet consumption.

73.     Privity exists because Defendant expressly warranted to Plaintiffs and the Class that the Pet Foods were suitable for consumption by pets and dogs as healthy, nutritious, premium, safe, clinically approved, subject to strict quality control measures, and/or unadulterated.

74.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

75.     Plaintiffs, and the Class, suffered harm and damage in the form of loss of animals, pet, and/or dog life, and/or illness of such animals.

76.     Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

77.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

### COUNT II – Breach of Implied Warranty of Merchantability

Plaintiffs incorporate by reference all other allegations.

78.     Defendant is a manufacturer and merchant engaging in the sale of goods to Plaintiffs and the Class.

15

79. There was a sale of goods from Defendant to Plaintiffs and the members of the Class.

80. At all times relevant, Defendant manufactured or supplied the Pet Foods, and prior to the time the Pet Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Pet Foods were of merchantable quality, fit for their ordinary use (consumption by dogs and pets), and conformed to the promises and affirmations of fact made on the Pet Foods' containers and labels, including that the Pet Foods were safe, healthy, nutritious and meet pet food standards.

81. Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Pet Foods.

82. The Pet Foods were not fit for their ordinary use, consumption by pets or dogs, and did not conform to Defendant's affirmations of fact and promises as they contained excessive toxins, mold, aflatoxins or other ingredients that did not conform to the product's labels, packaging, advertising, and statements at levels material to a reasonable consumer.

83. Defendant breached the implied warranties by selling the Pet Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained excessive toxins, mold, aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

84. Defendant was on notice of this breach or should have been aware of such during quality control testing, and other measures.

85. Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Pet Foods were suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to

strict quality control measures, and/or unadulterated and by failing to make any mention of excessive toxins, mold, aflatoxins, or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

86.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

87.    Plaintiffs, and the Class, suffered harm and damage in the form of loss of animal, pet, and/or dog life, and/or illness of such animals. Plaintiffs and other professional breeders suffered lost income and business interruption in the past and will continue to suffer such losses in the future.

88.    Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

89.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT III – Fraudulent Misrepresentation

Plaintiff incorporates by reference all other allegations.

90.    Defendants falsely represented to Plaintiff and the Class that their Pet Foods were fit for pet consumption, safe, healthy, nutritious, subjected to testing, met pet food quality and standards, and unadulterated.

91.    Defendants intentionally, knowingly, and/or recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase their Dog Foods.

17

92.     Defendant knew, or should have known, that their representations about the Pet Foods were false in that the Pet Foods contain excessive toxins, molds, aflatoxins, and other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

93.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the  Pet Foods to their detriment, and to the detriment of their pets and animals. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Pet Foods, Plaintiffs and the Class's reliance on Defendant's misrepresentations was justifiable.

94.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

95.     Plaintiffs, and the Class, suffered harm and damage in the form of loss of animal, pet, and/or dog life, and/or illness of such animals.

96.     Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

97.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT IV – Fraud by Omission

Plaintiffs incorporate by reference all other allegations.

18

98.     Defendant concealed, intentionally or recklessly, and failed to disclose to Plaintiffs and the Class that their Dog Foods contained excessive toxins, mold, aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

99.     Defendant was under a duty to disclose to Plaintiffs and members of the Class the true quality, characteristics, ingredients and suitability of the Pet Foods because: (1) Defendant was/is in a superior position to know the true state of facts about their products; (2) Defendant was/is in a superior position to know the actual ingredients, characteristics, and suitability of the Pet Foods; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Pet Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Pet Foods.

100.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Pet Foods.

101.     Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Pet Foods, which is not safe for pet or animal consumption when compared to how the Pet Foods are advertised and represented by Defendants.

102.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

19

103.    Plaintiffs, and the Class, suffered harm and damage in the form of loss of animal, pet, and/or dog life, and/or illness of such animals.

104.    Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

105.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT V – Negligent Misrepresentation

Plaintiffs incorporate by reference all other allegations.

106.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Dog Foods.

107.    Defendant breached their duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Pet Foods from the marketplace or to take other appropriate remedial action in a timely manner.

108.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the  Dog Foods were not as advertised or suitable for their intended use, consumption by dogs or pets, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that the Pet Foods contained excessive toxins, mold, aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

20

109.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

110.     Plaintiffs, and the Class, suffered harm and damage in the form of loss of animal, pet, and/or dog life, and/or illness of such animals.

111.     Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

112.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT VI – Negligence

Plaintiffs incorporate by reference all other allegations.

113.     The Pet Foods manufactured, distributed, marketed, and sold by Defendant are pet food for pet consumption.

114.     Defendant owed duties to Plaintiffs, and the Class, as identified in regulation and law, and per its own representations.

115.     In addition to negligence, Defendant's conduct amounts to negligent per se.

116.     Defendant violated their duties, including duties owed under law including adulterating the pet food, mislabeling, misbranding, false advertising, and failure to meet pet food standards. See Mo. Rev. Stat. 196.075.

21

117.    The Pet Foods are "adulterated" within the meaning of the law because "it bears or contains any poisonous or deleterious substance which may render it injurious to health".  See Mo. Rev. Stat. 196.070

118.    Defendant breached the duties owed to Plaintiffs, and the Class.

119.    Defendant failed to exercise due care when they sold the Pet Foods to Plaintiffs and the Class Members based on: (1) their exclusive knowledge of the ingredients, content, and final product of the Pet Foods; (2) their failure to properly test, control, audit and monitor the manufacture and distribution of the Pet Foods; (3) allowing toxins, mold, and aflatoxins in the Pet Food; and (4) failing to recall the Pet Foods in a timely manner.

120.    Defendant's violations of these duties and statutes were a substantial factor in the harm suffered by Plaintiff and the Class.

121.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Pet Foods they would not have purchased at all had they known of the risk and/or presence of excessive toxins, mold, or aflatoxins or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

122.    Plaintiffs, and the Class, suffered harm and damage in the form of loss of animal, pet, and/or dog life, and/or illness of such animals.

123.    Plaintiffs, and other professionals, suffered business harm, lost income and business interruption in the past and will continue to suffer such losses in the future.

124.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**COUNT VII – Unjust Enrichment**

Plaintiffs incorporate by reference all other allegations.

125. Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Pet Foods.

126. Defendant knowingly and willingly accepted and enjoyed these benefits.

127. Defendant either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Pet Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

128. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

129. Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

130. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VIII – Violation of the Missouri Merchandising Practices Act (MMPA)**

Plaintiffs incorporate by reference all other allegations.

130. Plaintiffs purchased Defendant's Pet Food for personal, family or household purposes.

131. Plaintiffs fed Defendant's Pet Food to their animals and pets, and the pets/animals ingested the Pet Food.

132.     Plaintiffs acted reasonably under the circumstances and relied upon Defendant's representations.

133.     Defendant's conduct was unlawful and in violation of the MMPA.

134.     Plaintiff suffered ascertainable loss of money, property, expenses, and animal life as a result of Defendant's conduct in violation of Mo. Ann. Stat. § 407 et seq.

135.     Plaintiff's damages are reasonably ascertainable, objective, and can be calculated.

136.     Plaintiffs seek to recover all damages available under Mo. Ann. Stat. § 407.025, including attorney's fees, class action, punitive damages, equitable relief, costs, expenses, and liquated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiffs and counsel to represent the Class, and requiring Defendant Midwestern to bear the costs of class notice;

B.     An order enjoining Defendant Midwestern from selling the  Pet/Dog Foods until it is safe and conforms to all standards, and the products' labels, packaging, advertising, and statements provide full disclosure of the risk and/or presence of toxins.

C.     An order enjoining Defendant from selling the Pet/Dog Foods in any manner suggesting or implying that they are suitable for consumption by dogs, cats, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

24

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.     An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of state law, plus pre- and post-judgment interest thereon;

G.     An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.     An order awarding punitive damages, if appropriate under the claim, law, and facts;

J.     An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

K.     An order providing for all other such equitable relief as may be just and proper.

**Jury Demand**

Plaintiffs, and the Class, hereby demand a trial by jury on all issues.

25

Respectfully Submitted,

/s/ Mark Schloegel
MARK SCHLOEGEL  #58870
Bert Braud #34325
The Popham Law Firm, P.C.
712 Broadway, Suite 100
Kansas City, Missouri 64105
Phone:  (816)512-2626
Fax:      (816)221-3999
mschloegel@pophamlaw.com
bbraud@pophamlaw.com

ATTORNEYS FOR PLAINTIFFS